Thank you very much, Your Honor. I am Thomas Kisdall. With me is my colleague Jason Smith. We represent the appellant in this matter, Bishop Charles vonRosenberg. This is the second time we've been before this Court on the same question, abstention. This case that we are concerned with was filed on March 3, 2013. We are now well into three and a half years into it and we are still dealing with the question of abstention. This Court, in the first appearance we made and in your decision, sent the case back to the District Court to apply the correct standard for abstention, Colorado River. The District Court did that but came up with the same result and abstained for the second time. Now, the District Court did that, the second abstention, despite changed circumstances that had occurred since the first abstention, which are very important, I think, in the disposition of this appeal. And I look forward to talking about that in the course of my remarks. There was clearly new evidence that changed the posture of the case between the first abstention and the second abstention. And that mainly is that the state court action was disposed of and was over by the time of the second abstention. That is in the trial court. Now, that case was appealed and it is now before the South Carolina Supreme Court. That case was argued before the South Carolina Supreme Court on September 23, 2015. And there has still been no opinion issued by the court more than a year and a half after the hearing. And I mention the time frame here because it becomes important because the Chase-Brexton case, one of the leading cases, as you well know, on the doctrine of abstention, provides that when cases are abstained, when the court abstains, it must be assured that in the state court that the resolution of any Lanham Act claims are prompt and complete. Well, the fact is there has been no disposition of any Lanham Act claims at all. In fact, the district court in the record in this case, here today, page 1156 in the record, says that the state court did not have Lanham Act claims before it. And none were considered and none ruled upon. So it's hard to see how the cases could be parallel, which is the requirement for abstention, if the Lanham Act claims, if there were any, weren't even considered. So it is our contention that the district court made a mistake by not considering, recognizing that there were no Lanham Act claims undertaken by the state court, but not considering that in deciding whether or not to abstain. If the appellate court affirms the judgment of the state trial court, what would be the res judicata collateral estoppel effect on the Lanham Act claims? Donald, we contend and do not believe there would be any for this reason. The only claims before the state court are property, local property ownership and control issues. There are no Lanham Act claims involved. I understand that, but you know, I'm sure, I can tell that you're an experienced lawyer. You know that issue preclusion could still be a possibility here, would it not? Well, under the Palm Wonderful v. Coca-Cola case, Supreme Court of a year or two ago, there would not be issue preclusion. Why is that? Well, the Lanham Act goes beyond any sort of trademark claims or anything like that. But the factual underpinning is the same. Excuse me? The factual underpinning is the same. So if all the facts are determined against you. Well, Your Honor, we do not believe that the issues in the state court are local property issues. They rise out of the same facts, do they not? What facts are different? Between the state court and how? Between the state court property claims and the Lanham Act claims. Well, it is this, that what the Lanham Act claim is, is that Bishop Mark Lawrence, the defendant in this action, calls himself a bishop of the Episcopal Church. He is not a bishop of the Episcopal Church, and the record in this case reflects that. So the Lanham Act claim is brought for the purpose in interstate commerce of stopping him from saying that he is. And that is not addressed. What did the state trial court say with respect to that issue? That he owns a corporation that is called the Protestant Episcopal Church in the Diocese of South Carolina. And so holding himself out as such was all right according to the state court, correct? Since that is what he was. Well, he claims to control the corporation. He claims to control it. But he says he is a bishop of the Episcopal Church in his advertising and holding out to the public all over the United States. But he is not and says he is not. And that is the difference. So it is our contention and we do not believe that anything that is decided in the state court can dispose of the Lanham Act claims. And the district court judge recognized that those claims were not addressed but refused to apply it in his analysis for deciding abstention. Are there not contingent future events that may occur that would affect the litigation in the Lanham Act claim? Your Honor, we do not think so. I mean, what is at stake in the state court is who owns property. I mean, who owns this piece of property? Who owns that piece of property? Who owns this trust fund? And those I will follow up on Judge Motz's question. If the South Carolina court were to reverse, then the posture of the Lanham Act claim would be totally different, would it not, in terms of Mr. Lawrence holding himself out in some capacity if, in fact, he is no longer permitted to do so in South Carolina law? We are the appellant in the state court. So if the Supreme Court, which they may well do, reverse that decision, the Lanham Act would still be out there trying to enforce the Lanham Act in interstate commerce. And we would not get that relief by prevailing in the state court case. We would simply not get that relief. He's still advertising himself. But there is still, there is essentially then, there's almost a question as to whether or not this claim is ripe for adjudication if it rests upon contingent future events. Is that not correct? Your Honor, it is our contention that in the litigation that is pending, contingent future events do not affect this claim before this court. We get no relief, even if we win. He's still advertising himself as a bishop of the Episcopal Church and has for four years now. What Judge Haupt, the district court judge, said in his order is, quote, the state court held that the proposed Lanham Act claims were not before the court. And frankly, we tried to get them before the court. And we were rebuffed and said, no, you cannot bring those claims in this court. And we, of course, we failed, but we tried. So if, in fact, the Lanham Act claims were not before the state court, the cases couldn't be parallel. Now, as you well know, but simply for the record here, the Colorado River case says that, I mean, it's almost no case that the Lanham Act claims should not be allowed to proceed in the federal court. The federal court, it says, has unflagging jurisdiction, unflagging obligation to accept jurisdiction of this case. And they simply have not done that yet. And what we're asking you today to do is to let us have a trial after three and a half years. Now- We just had a trial. You don't like that trial. Not on the Lanham Act. That's right, not on the Lanham Act. How many witnesses were at that state court trial? I can't tell you, but there were about 50 parties, Your Honor. About 56 witnesses. Probably so. But it involved ownership of property, and the reason there were so many witnesses is because it involved a lot of separate parishes. And the parish property is at stake. Parish property, diocese property, that's what is to be decided by the state court. Not whether or not Mark Lawrence, the defendant in this case, is falsely advertising himself as a bishop of the Episcopal Church, causing great confusion, pervasive confusion, right now. So we think our position is that we should be allowed to proceed in the district court on this claim to prevent that harm and damage that is being caused. And it is a federal statute that, of course, is not precluded by any state law action. If we went forward on the Lanham Act claim, the trial, as you urge us to do, and then the Supreme Court of South Carolina affirms the trial court's decision, what impact would that have? Your Honor, thank you very much. Even if the other side prevails in the state court litigation, the defendant in this case is not allowed to say he's someone who he's not, to the detriment of the public because of the confusion it causes. I would urge you, please, to take a look at this court's case of Purcell v. Summers. Decided in 1944, not long before the Lanham Act was enacted, but on exactly the same principles. Judge Parker, whose poetry is right back here, wrote that decision. And it's almost a copy of the facts in this case. Some people in Orangeburg, South Carolina, left the Methodist Church, but continued to call themselves the same Methodist Church. And Judge Parker said, that's something you cannot do. It causes confusion everywhere. And that case is on point with exactly what we have here. So I would urge... There were abstention issues in that case, and there was a parallel state court, or an allegedly parallel state court proceeding? I don't think there was not an abstention issue. I don't think there was either. There was not an abstention issue, Your Honor, but the underlying facts of a Lanham Act claim were decided by this court on almost the same facts as this case, but it didn't involve abstention. Well, if the Right Reverend Lawrence prevails in the state court, the appellate court, as he did on the trial court, what can he call himself? Anything he wants to, for example. I'll give you... Well, not anything, because you said he can't call himself... Well, anything that distinguishes him from the Episcopal Church. Now, he could call himself like there's a church in America called the Reformed Episcopal Church. He could call himself something like that, but not the Reformed Episcopal Church, because then he'd be in trouble with them. Can he call himself the Episcopal Church of South Carolina? He cannot call himself the Episcopal Church of South Carolina, I don't believe, because the name Episcopal Church is protected by registered federal trademarks. He does not have any trademarks except state-registered trademarks. So he can call himself, I am a bishop of an Episcopal diocese. I do not believe that he would be allowed to do that, John. Well, my goodness, you talk about winning the battle and losing the war. Look what you are precluded from doing. Look at you. You are enjoined from using, assuming, adopting any indirect name, style, emblem, mark that may reasonably be perceived by those... We do not use a name that conflicts with what he's doing due to the litigation. Well, but once the litigation, Judge Gregory is positing to you the litigation is over. You've continued to lose in the South Carolina courts. And the question is whether he can call himself... And he has all the rights that were given to him by the South Carolina state court judge. That's the declaration. Your Honor, I think he would be prohibited by the Lanham Act from calling himself and for trademark violations calling himself a bishop of the Episcopal church. He would not be allowed to do that. And the Purcell v. Soma says that and all the other cases surrounding it. Now, my time is up, but we think we entitled to an injunction under Eisenberg v. Maryland and that you all should give us a preliminary injunction to stop this thing now after three and a half years because there hadn't been any prompt settlement of it. There hadn't been any settlement of it. Thank you very much. Thank you, sir. Thank you. Ms. Golden. Thank you very much. I represent Bishop Lawrence and we are here before you today on the very same basis that we were here previously in that there are now exceptional circumstances. You've asked Judge Hout to identify the exceptional circumstances and Judge Hout did so. The issue before the court has now been changed by the appellant. The appellant is trying to say that he is in a new position. However, this court properly recognized the issue in its March 31, 2015 decision. Counsel, you would recognize that all of the abstention cases talk about whether you have a right duty of abstention when the fact is they exist at the time. So what effect does the South Carolina case that you've won at the trial court level, I take it there's been no appellate decision yet? That's correct. When do you expect an appellate decision? That is a good question. We have no expectation. Is there not a standard amount of time, 15 months, 2 years, 8 years? Your Honor, we have had a state decision that took some 8 to 9 years over the school systems. This doesn't strike me as the same kind of issue. It is not, but there is no guideline that dictates to us. I think there's a rule or a state statute or something which says, which counts in the number of days, not years. I think you're right, but that has never been followed. If the state court action, if there is an affirmance, let's just leave aside what happened last time and look at the facts as they exist right now. If there is an affirmance of the state court's trial court's action, what is the effect, what is the res judicata collateral estoppel effect? The effect, it would preclude the appellant from asserting any violation of the Lanham Act. Why is that? Because the underlying issue was the ownership of the diocese, the control of the diocese, and consequently the use of the diocese marks. During the trial of the lower court, which were 59 witnesses over 2 weeks, one of the primary issues was the use of the word Episcopal. There were a number of witnesses that addressed that use. Judge Goodstein, in her order, found that the finding number 80, that the word Episcopal predates the establishment of both the diocese and the Episcopal church, the national church. The word Episcopal is used by many different churches outside of the national Protestant church and outside of the diocese in South Carolina. And that is finding number 80. And under the Lanham Act, there has to be some basis or foundation for the appellant to assert that there is a violation of the Lanham Act. The appellant in this case has changed the allegations of the complaint. In the complaint, in his complaint, he alleges that he is the lawful bishop of the diocese. The state supreme court has said, no, you are not. The lawful bishop is Bishop Lawrence. Now he's, to avoid that, he has changed the allegations and said, Well, it doesn't matter if Bishop Lawrence is the lawful head of the diocese. And it doesn't matter if the diocese is an unaffiliated entity of the national church, which is completely contrary to what they pled. They say, now, even if you're unaffiliated, even if we have no connections to the diocese, you're using the name Episcopal, the Episcopal church. And that's what Mr. Tisdell stood up here to say. That issue was adjudicated in the state court. And that's why it would preclude the appellant from asserting that issue in a Lanham Act case. All right, now let me ask you the converse. If the state supreme court reversed the trial court, there would be no race judicata collateral estoppel effect on this issue, right? Correct. And there would be a live Lanham Act issue that cannot be determined in the state court. So the two actions would not be parallel, right? The two actions would continue to be parallel. Well, they couldn't be parallel unless you can resolve all the issues in the state court that you could in the federal court. That's correct. But you couldn't. If the state supreme court has said, no, we're not, we don't agree with what the state trial court said, so that there is a live Lanham Act claim. Possibly. Well, you may not, they may not prevail on it, but it would be alive. Well, no, I disagree because it hinges on, you're right, but the finding is that the word episcopal existed. It's a factual finding. I know, but we're positing a situation, I know we never like to think about losses, in which the state supreme court rejects that view. Correct. So that finding no longer stands. So to go back to what my colleague suggested, don't we have an unclear terrain that we're looking at right here? Well, we definitely have an unclear terrain, there's no doubt. You would also agree that abstention from matters that are exclusively for federal jurisdiction is very hard to do that, isn't it? We're told that we should be very careful before we do that because it's our obligation to hear federal claims, particularly those of Lanham, correct? Yes, Your Honor, but going to the queries before is that the questions you ask go to the rightness because those are future contingencies. And therefore, that's why I say, you know, they're not right for adjudication. Well, you haven't made the claim, I don't think, in your papers, that the state trial court's decision is a final judgment that has race judicata effect here. I mean, you may have an argument there, but you haven't made that argument. And indirectly through the discussion as to the Anti-Injunction Act. Well, it was too indirect for me, ma'am. I understand. Well, we did argue the Anti-Injunction Act in our brief. I understand that, but I think that you need – I don't think that you made an argument that was clear enough to me or the other side that they should respond to race judicata collateral stuff. And I don't, frankly, know the effect of a state court, lower court judgment in South Carolina for those purposes. You are correct. We did not directly address that, Your Honor. There's no doubt. I mean, it's possible that that judgment does have race judicata effect. I agree with you, but that was not – we did not directly in our brief address that issue. We did try to assert it, but as an indirect, the Anti-Injunction Act, through that venue. But primarily as a state that, you know, the complaint alleges that the bishop, the appellant, is really the bishop of the diocese and that he was replaced by Bishop Lawrence. And then there are 55 paragraphs that follow as to why he is the lawful bishop. In the briefs of the appellant, they've changed the complaint. And I do not believe that this court should permit that to occur. Judge Houk ruled on the allegations in the complaint. And based on the allegations in the complaint, the factors that he analyzed should be determined as supporting abstention. The first factor involves whether the property is subject to in rem jurisdiction or whether a court has assumed in rem jurisdiction. The judge ruled that this does not support abstention. The appellant rules that – the appellant suggests that there was not proper weight applied. But there was – but the appellant does not provide any indication or cite statute as what weight should be provided. I believe that the weight is dependent upon the facts. The second factor is whether the form is inconvenient. Judge Houk ruled that this factor does not support abstention. Here again, the appellant takes the position that that was not ruled – the weight was not properly applied without indicating any weight. The third factor was the desirability to avoid piecemeal litigation. Judge Houk ruled that this was a significant factor. Piecemeal litigation arises when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. I think with the property involved, primarily in this law, are the four marks. How can a federal court determine that the four marks are only exercised or can only be exercised by the appellant and the state court has an opposite position? I would also like to point out to the court that the appellant is no longer the bishop. He stepped down and resigned last September 2016 and has been replaced. I was anticipating some motion to this court by the appellant's counsel to address that issue, but the appellant has no longer standing, for he does not exist in the position that he held at the time this complaint was filed. Well, you haven't filed any motion with respect to that. I have not, Your Honor. I have not. I did not believe that that was our responsibility. Well, if your argument is that he has no standing, it seems to me that that helps your case a lot. I would have thought you'd be interested in bringing that officially before us. I agree. Vis-a-vis a motion. I agree. Aside from the third factor, the fourth factor, it's whether the relevant order in which the court obtained jurisdiction and the progress achieved in each. The relevant order is six weeks. Our state action was filed approximately six weeks prior to this Federal action. The progress is not disputed. The reason for the progress is disputed, but that's not the criteria for determining the fourth factor. It is actually the progress. Further, I know of no law, nor could I find any law, that an incorrect judicial ruling which delays a Federal issue means you disregard the progress in the State court. Ms. Golden, may I ask you a question? Yes, sir. Your client, as you know, you're the small diocese that's located in South Carolina. I'll just keep it, no name, just geographically only, not name, not nomenclature. I understand. All right. So, couldn't it be possible you could win, as you did in trial court, all of these things that they're precluded from using in terms of interfering with the diocese, properties, marks, emblems, everything, stuff. But because the other side is so big, national, aren't there still things that you are prohibited from doing under Lanham? Even by name, it may be so confusing. Like, you couldn't call yourself United Methodist Church. I agree. Right? I agree. So, that being the case, aren't there things that you may be calling yourself? I mean, I'm not going to ask you to concede anything, but there will still be a Lanham Act issue as to whether or not it is so close it is confusing and there's a detriment in terms of the operation of the National Church. That still would be a live issue, notwithstanding you want all of these property claims in South Carolina. Is that true? No, sir. It's not. Tell me why. Because the appellant argues the word, the word, the important word is Episcopal. Well, that's a good point. You may, obviously, there's an African Method Episcopal, there's several Episcopal. But that wouldn't, but that doesn't mean that your use and the way you operate might not interfere or cause some confusion, though. So, it's not just the word Episcopal, it's how you operate and how you may be presenting yourself and how others may perceive you. Isn't that still a justiciable issue under the Lanham Act? That issue was an underlying issue in this case because my client, the diocese, existed prior to the National Church. And we, just as the use of the word Episcopal existed prior to the National Church. So, while this may not be a chase to the courthouse, who gets there first? But we clearly were the ones that started using Episcopal first. We were organized first. And so, I think that that is indicative of. You may have, that means you have a great defense in the Lanham Act. But that's an issue that was litigated. You said the issue resolved was that there's no exclusivity to using the word Episcopal. That's a little, a lot narrower than the question of whether or not it may be misleading use and impact. The Lanham issue claims are broader than just exclusivity of a name, aren't they? I'm not trying to trap you. I'm just saying what we're trying to get. Isn't that true? That's true, Your Honor. Yeah. All right, go ahead. Well, what was decided in the state court that you think would be, would have preclusive effect? With respect to the word Episcopal, with respect to the Lanham Act claims, there I go to. The appellant contends that now, not in the complaint, contends that Bishop Lawrence shouldn't use the word Bishop, but should only use the word CEO, and shouldn't use, and that marks with the word Episcopal should not be used. Uh-huh. The lower court, just as Judge Goodstein ruled, there is no magic to the word Episcopal. That's in finding 80 in her findings of fact. Uh-huh. Therefore, that is not under the Lanham Act. That is not in the domain, and I am not a Lanham expert. No, I understand what you're saying. I'm asking, I asked you about regular res judicata collateral estoppel law preclusion. And you're saying that that issue, if it's upheld on appeal, has been determined. Correct. Okay. Now, going to what you said about the complaint. Yes. What is the difference between what was alleged in the complaint and what is alleged now on appeal? In the complaint, the primary basis of the complaint, as this court stated in its decision in March of 2015, is this appeal rises from a dispute between two clergymen, each believes himself to be the proper leader of the Protestant Episcopal Church in the Diocese of South Carolina. The complaint alleges that the diocese I represent was not permitted to disassociate itself from the national church and that, therefore, Bishop von Rosenberg is really the rightful bishop of my client. I'm sorry, ma'am. I actually am kind of familiar with our earlier opinion. What I thought that you had said to us a few minutes ago and what you said in your brief, and I just wanted to be sure I understood it, was that what had been alleged in the complaint with respect to the identity of the opposing bishop was different than what they are saying, how they're characterizing him on appeal. Is that incorrect? Have I misunderstood your argument? I think, and I apologize for being confusing. No, I mean, in the complaint, they say that the diocese is still part of the national church. Right. Today, they're saying the diocese, even if, as it's been ruled, is an unaffiliated entity, they cannot use the word Episcopal or use the word bishop. Okay. Do you have the complaint in front of you? I do not, but may I get it? Sure. And I thought you said in the very beginning of the complaint that paragraph one. Paragraph one I'm looking at. I've got it in front of me. Okay. And after the first sentence, it says, The diocese is a part of the Protestant Episcopal Church in the United States of America. Right. The Episcopal Church. Bishop Lawrence is a former bishop. Of the diocese. Of the diocese. And now what are they saying on appeal that you say is different than that? They're saying that, and they say this in their brief. I got you. If they're unaffiliated, even if the diocese is unaffiliated, and we accept it could be unaffiliated to the national church, we still have a Lanham Act. But that's not what they have alleged in the complaint. They have not alleged that the diocese is unaffiliated. The diocese being your group? That's correct. Okay. Ms. Golden, if the issues are not parallel as contended, then does that end the abstention analysis under Colorado River, or are there alternative basis for abstention? Well, in the directive that this court gave to us, parallelism wasn't part of our judge house inquiry. But isn't parallelism a requirement for Colorado River? It is. It's the first step. So you have to have had Colorado. You have to have it. That's correct. You have to have it. And there is, because the parties are substantially the same, and the issues are substantially the same. Thank you very much. Thank you very much. Do you have some time reserved? Just for clarification, what the claim is as to what Bishop Mark Lawrence can call himself is really a combination of three words, Episcopal, diocese, and bishop. Not Episcopal standing by itself, because there are other Episcopal churches. What he actually, what we contend that he really can call himself, is what he says he is. He says he's the chief executive officer of a South Carolina corporation that has no affiliation with the Episcopal church, and one that provides services that are different from that of the Episcopal church. And so he can call himself, I mean, there are a lot of things he can call himself, but he can't call himself in a confusing way in context of Episcopal, diocese, and bishop. Okay. It's just as clear that what your allegation is, is what's in the complaint, and you cannot change your argument on appeal without amending your complaint. I agree completely. I agree completely. So whatever's said in the complaint is what you're alleged. I agree completely, but I would contend that that's what it is. But the complaint, you're correct, is what our claim is. Now, Bishop von Rosenberg, on the other hand, and we will at an appropriate time add the new bishop's name to this case, Bishop von Rosenberg still has standing because he is a bishop of the Episcopal church, and he's part of the hierarchy of the Episcopal church, as Judge Howe determined. And so certainly he has standing, and our Judge Howe said he had standing in that position. So that's certainly not an issue. And at the appropriate time, if you'll allow us to have a trial on the merits in the district court, for consistency we will add the name of the new bishop as a party plaintiff. I wanted to talk just for a minute, and this did not come in her argument, so if it's not proper, tell me. Before you do that, can I go to that point? Because you say in paragraph two of your complaint that the right reverend Charles von Rosenberg is the provisional bishop of the diocese, an office into which he was elected and installed at a special meeting on January 26, 2013. So is he still the provisional bishop of the diocese? He is a bishop of the Episcopal church, but not another provisional bishop of the Diocese of South Carolina, whose name we plan to add as a party plaintiff. I hear you, but you've characterized who your plaintiff is, and now he no longer is that. Well, but Your Honor, I used Judge Howe's language by saying he's a part of the hierarchy of the Episcopal church. And in that position has standing to bring this lawsuit on behalf of the  Well, he doesn't say he's a part of the hierarchy. He says he is the bishop of the diocese. As the bishop of the diocese, he's harmed. But is he no longer the bishop of the diocese? He's not the provisional bishop of South Carolina. Well, the next paragraph says, as the bishop of the diocese. Is he the bishop of the diocese anymore? He's not presently the bishop of the diocese. But we intend to add the name of the person as a party who is the provisional bishop of the diocese to be a part of the case, along with Bishop Rosenberg, who has been the one suffering the confusion ever since he became the provisional bishop. We would hope that this court would consider granting a preliminary injunction in this case, since we have been trying to get relief under the Lanham Act, the federal statute for three and a half years with no result because of two abstentions. And such an injunction would not in any way conflict with state injunction. And it would simply be what's good for the goose is good for the gander until the South Carolina Supreme Court decides this case. Now, my friend, Ms. Goldman said it could be eight or nine years. We certainly hope that's not the case. It has been over a year and a half now, and we hope it will be resolved soon. Has the court have made any contact with you all for additional briefing or anything like that? No, Your Honor. There's been no inquiry? No, Your Honor. We are waiting. So I conclude by thanking you very much for this hearing today. And I hope what we have both said has been of some benefit to the court. Thank you. We thank both counsel, and we'll come down and greet you, and then we'll proceed to our next case.
judges: Roger L. Gregory, Diana Gribbon Motz, Richard D. Bennett